UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IDEARC MEDIA CORPORATION,
            Plaintiff,

                                      Case No. 1:07-cv-475

-v-
                                      HON. PAUL L. MALONEY

HETTINGER & HETTINGER., P.C.,
            Defendant.

OPINION REGARDING PLAINTIFF/COUNTER-DEFENDANT IDEARC MEDIA
CORPORATION'S MOTION TO DISMISS

      This matter is before the court on Plaintiff/Counter-Defendant Idearc Media
Corporation's Motion to Dismiss filed under FRCP 12(b)(6).  Plaintiff/Counter-Defendant Idearc
Media Corporation (Plaintiff) filed a two count  complaint for breach of contract and for attorney
fees on May 16, 2007.  Defendant/Counter-Plaintiff Hettinger & Hettinger, P.C. (Defendant)
filed its answer and five counter-claims.  Plaintiff Idearc filed this motion to dismiss Count I
(promissory estoppel), Count III (negligent misrepresentation), and Count IV (bad faith) and a
supporting brief (Dkt. Nos. 7 and 8) on June 29, 2007.  Defendant Hettinger filed its response
and brief (Dkt. Nos. 12 and 13) on July 26, 2007.  Plaintiff filed its reply brief (Dkt. No. 18) on
August 13, 2007.  The parties have not requested oral argument and this court concludes a
hearing is unnecessary.

      Plaintiff and Plaintiff's predecessor[1] publish advertisements in local telephone
directories, among other things.  (Complaint ¶ 5).  Defendant Hettinger has done business with

_____

       [1]Plaintiff and its predecessor, Verizon Directories Corporation, will be collectively
referenced as "Plaintiff."

Plaintiff for more than ten years, entering into a series of contracts between 1997 and 2006. (Countercomplaint ¶ 1). Defendant admits it entered into four contracts with Plaintiff in 2005 and 2006. (Answer to Complaint ¶ 4). Plaintiff attaches to the complaint four Applications for Directory Advertising (Applications) purportedly executed by Defendant in 2005 and 2006. In 2005, Michael Hettinger, on behalf of Defendant, signed Applications which outlined monthly prices and the various places Plaintiff would publish Defendant's advertisements. (Answer to Complaint ¶¶ 10 and 14). *See* Plaintiff's Exhibits A and B to complaint. Plaintiff attaches two applications allegedly executed in 2006 by Defendant as Exhibits D and E to the complaint. Defendant admits it entered into a single contract with Plaintiff in 2006 for advertising totaling $4,100.00 per month. (Answer to Complaint ¶ 28). However, Defendant disputes the authenticity of the two 2006 applications submitted as exhibits D and E to the complaint. (Answer to Complaint ¶ ¶ 28 and 30).

The Applications submitted by Plaintiff include a reference to the terms and conditions of the contract. In 2005, the Application included the following provision:

> I _____ (print name) authorize Verizon Directories Corp. and its affiliated publishing companies ("Verizon" or the "Publisher") to publish the advertising described above in the products specified. This application is subject to the Application of Directory Advertising Terms and Conditions. If Verizon publishes my advertising, I agree to pay the monthly rate shown above in accordance with such Terms and Conditions. I acknowledge that I have read and agree to such Terms and Conditions and that I have received a duplicate copy of this Application and the Terms and Conditions (4 pages). I warrant that I have full authority to sign for and bind the party listed above to this application.
>
> Except as provided in Section 22 of the Terms and Conditions, neither Advertiser nor any agent of Publisher, including the Representative, may change, add to, or delete any provision of this Application, including the Terms and Conditions, or any pre-printed addendum, and any such amendment, addition, or deletion is void.
>
> Terms and Conditions are also available at www.superpgates.com/terms.

2

The language in the Application was modified and rearranged at some point in 2005 or 2006, but continued to include the same relevant provisions.[2]  *Compare* Applications in Plaintiff's Exhibits A and B to the complaint with Plaintiff's D and E to the complaint.  Section 19 of the Terms and Conditions is a choice of law provision stipulating that all disputes relating to the Application are governed by Texas law.  (Complaint ¶ 13).  *See* Plaintiff's Exhibits A, B, D, and E to the complaint.  The Terms and Conditions have included the choice of law provision at least since 2003.[3]

Defendant admits it has been behind in its account with Plaintiff, but alleges it received assurances that it would not be "locked out" from advertising so long as it maintained advertisements in Plaintiff's directories.  (Countercomplaint ¶¶ 2, 3 and 5).  In May 2006, Defendant entered into a contract reducing the amount of advertising from its earlier levels.  (Countercomplaint ¶ 9).  Defendant made the same payments throughout 2006 it had been making for the previous eighteen months.  (Countercomplaint ¶ 18).  In September 2006, Defendant was informed it had been locked out of the new telephone books.  (Countercomplaint ¶ 20).  Defendant alleges its revenue between October 2006 through May 23, 2007 was $342,463.00 less than what was generated during the same period the year before.  (Countercomplaint ¶ 25).

---

[2]The Applications attached as part of Plaintiff's Exhibits A and B of the complaint indicate they were revised in May 2003.  The Applications attached as part of Plaintiff's Exhibits D and E of the complaint indicate they were revised in August 2005.

[3]Plaintiff attaches a version of the Terms and Conditions from May 2003 to its reply as Exhibit 1.  The Terms and Conditions attached as part of Plaintiff's Exhibits A and B of the complaint indicate they were revised in August 2005.  The Terms and Conditions attached as part of Plaintiff's Exhibits D and E of the complaint indicate they were revised in December 2006.

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a district court must construe the complaint in the light most favorable to the plaintiff, accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff. *Directv, Inc v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Evans-Marshall v. Bd.of Educ. of Tripp City Exempted Vill. Sch. Dist.,* 428 F.3d 223, 228 (6th Cir. 2005).  However, a court does not accept as true unwarranted factual inferences or legal conclusions alleged in the complaint.  *Directv, Inc*, 487 F.3d at 476.  A motion to dismiss under this rule should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would support a claim entitling the plaintiff to relief.  *Id*.  A claim lacking factual merit is more properly addressed under the summary judgment rule.  *Evans-Marshall*, 428 F.3d at 228.  The defendant has the burden of establishing that the plaintiff has failed to state a claim upon which relief may be granted.  *Directv, Inc*, 487 F.3d at 476.  When considering whether to grant a 12(b)(6) motion, the court primarily considers the allegations in the complaint, but may also take into account items appearing in the record of the case and attached exhibits.  *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

Plaintiff argues Counts I, III, and IV of the countercomplaint should be dismissed because Texas law does not recognize the claims alleged in those counts.  Plaintiff argues the agreement specifies that disputes are governed by Texas law and that Michigan's choice of law rules would defer to Texas law.  Plaintiff does not argue that the three counts are not recognized in Michigan.

Defendant responds it is not bound by the choice of law provision because it was never presented with the Terms and Conditions portion of the exhibits attached to the complaint.  Defendant admits it executed Applications in 2003, 2004, 2005 and 2006.  (Countercomplaint ¶¶

33 and 45).  Defendant admits the applications attached as part of Plaintiff's Exhibits A and B are correctly identified.  (Answer to Complaint ¶¶ 10 and 14; Brief in Response, 5-6).  Defendant challenges the authenticity of the Applications attached as part of Plaintiff's Exhibits D and E. (Answer to Complaint ¶¶ 28 and 30).  Defendant alleges the signature on the application attached as part of Plaintiff's Exhibit E is a forgery. (Answer to Complaint ¶ 30; Brief in Response, 6).

It is beyond doubt that the Terms and Conditions of the agreement governing the 2005 contractual relationship between the two parties specify that disputes arising under that agreement are governed by Texas law.  The Applications Defendant admits signing clearly place the law firm on notice of the Terms and Conditions which would govern the agreement.  Parties generally have a duty to read a contract and know what they are signing.  *Stopczynski v. Ford Motor Co.*, 503 N.W. 2d 912, 913 (Mich. App, 1993); *Thigpen v. Locke*, 363 S.W. 2d 247, 251 (Tx. 1962). The Terms and Conditions dating back to 2003 have included a choice of law provision specifying that Texas law governs disputes arising under the Application.

However, the same has not been established for the 2006 relationship between the two parties and therefore Defendant Hettinger has the better argument.  Construing the facts alleged in the pleadings in a light most favorable to Defendant, it is possible for Defendant to establish a set of facts supporting a claim on which it would be entitled to relief.  Defendant only admits to signing the 2005 applications and disputes the veracity of the 2006 applications submitted by Plaintiff.  To the extent that any of Defendant's counterclaims arise under a contract, application or promise made in 2006, Plaintiff has not yet established that the parties agreed to rely on Texas law to settle those disputes.

Plaintiff's reply points to a number of places in the pleadings where Defendant admits it was in a contractual relationship with Plaintiff.  Plaintiff is correct that Defendant concedes the existence of a contractual relationship between the two parties.  However, Plaintiff is simply incorrect that Defendant has admitted it entered into a contractual relationship with Plaintiff in 2006 in which the parties agreed to have Texas law govern any dispute.

To summarize, Defendant admits the applications executed in 2005 are contracts.  This court agrees with Plaintiff that any dispute arising from the 2005 contracts is governed by Texas law.  Defendant admits to entering into a single contract with Plaintiff in 2006.  Defendant alleges that the Application submitted by Plaintiff as Exhibit D to the complaint is not the agreement between the parties.  Taking this allegation in a light most favorable to Defendant, it is possible for there to be a different contract.  It is also possible that the parties reached an agreement that did not contain a choice of law provision.  Defendant also alleges the application submitted as Exhibit E contains a forged signature.  In light of these allegations and under the appropriate standards for reviewing this motion, Plaintiff has not established that Texas law governs the portions of the countercomplaint arising in 2006.  Defendant asserts Michigan recognizes its counterclaims and Plaintiff has not established otherwise.  Therefore, Defendant's claims should not be dismissed.

/s/ Paul L. Maloney

Dated: September 4, 2007

_____

Honorable Paul L. Maloney
United States District Court Judge